F I L E D
CLERK OF COURT

2025 JAN 22 PM 1: 57

SUPERIOR COURT
OF GUAM

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**FREDERICO SANTOS MANGLONA, JR.<br>aka Frederico Santos Manglona aka<br>Federico Manglona Santos aka Fred aka<br>Frederico Santos Jr. Manglona aka<br>Federico,**<br><br>Defendant. | CRIMINAL CASE NO. **CF0664-21**<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on October 10, 2024, for hearing on Defendant **FREDERICO SANTOS MANGLONA, JR. aka Frederico Santos Manglona aka Federico Manglona Santos aka Fred aka Frederico Santos Jr. Manglona aka Federico's** ("Defendant") Motion to Suppress. Present were Assistant Attorney General Sean E. Brown on behalf of the People of Guam ("the Government") and Defendant with counsel, Deputy Public Defender John P. Morrison. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On January 3, 2022, Defendant was indicted with the following charges: (1) Possession with Intent to Deliver a Schedule II Controlled Substance (As a First Degree Felony); (2) Possession of a Schedule II Controlled Substance (As a Third Degree Felony); and (3) Operating

a Motor Vehicle without a Valid Operator's License (As a Violation). (Indictment, Jan. 3, 2022). The two felony charges also have an attached Notice: Commission of a Felony While on Felony Release. *Id.*

On September 5, 2024, Defendant filed the instant Motion. On September 19, 2024, the Government filed its Opposition, and on September 26, 2024, Defendant filed his Reply.

On October 10, 2024, the Court heard sworn testimony from Guam Police Department ("GPD") Officer Greg Peter Calvo ("Officer Calvo"). The Court ascertained the following facts from Officer Calvo's testimony:

1. Around 2:30 in the morning, Officer Calvo observed a grey Volvo with a defective brake light in Sinajana village. The vehicle was driving towards Route 4 past the Tutujan Quick Stop store. Officer Calvo indicated the traffic light was red as they were approaching and then turned green, allowing them to turn left. Officer Calvo indicated that one of the brake lights did not illuminate when the vehicle was beginning to slow down as they approached the traffic light. Officer Calvo testified he could visibly see the car slowing down because of the red traffic light. Officer Calvo testified that there was one defective brake light on the vehicle; there was another brake light still working. Officer Calvo could not recall if the Volvo also had a brake light in the rear window.

2. Officer Calvo followed the vehicle and executed a traffic pullover at the Agana McDonalds parking lot.

3. Officer Calvo did not stop the vehicle earlier because he did not think it would be safe to activate the emergency lights in the middle of the intersection and for Defendant to have made an immediate right from the inner lane into the 76 Gas Station. Officer Calvo testified that the McDonalds parking lot was lit up with lights.

4. Officer Calvo approached the driver's side of the vehicle and immediately noted a strong smell of what he believed to be marijuana. Officer Calvo informed the operator, Defendant, the reason for the traffic pullover.

*People v. Manglona*
Case No. CF0664-21
Decision and Order

5. Officer Calvo indicated that as he was approaching the vehicle, he thought the operator might be under the influence because of the smell, however, Defendant did not display any signs that he was under the influence of marijuana while they were speaking.

6. Defendant informed Officer Calvo that he had purchased the vehicle two to three weeks prior to the pull over. Officer Calvo tried to get in touch with the registered owner of the vehicle to make sure that the information was accurate. Officer Calvo testified that while there may be instances where he would step away to his vehicle to make a phone call, he would have been comfortable making the phone call in front of him because their interaction was not hostile. Officer Calvo did not recall being able to get ahold of the registered owner.

7. Officer Calvo estimated that five to ten minutes may have passed from initially pulling over the Volvo and trying to contact the registered owner.

8. While speaking with Defendant, Officer Calvo illuminated the inside of the vehicle with his flashlight and observed a black fanny pack with a beveled straw that contained a white powdery substance. The fanny pack was hanging on the gear shifter on the driver's side near Defendant's knee area. Officer Calvo indicated the straw was clear with a blue line and it was beveled (cut). Officer Calvo testified the straw was sticking out of the fanny pack and that he could clearly see the white powdery substance inside. Officer Calvo testified that based on his training and experience, he believed the white powdery substance to be methamphetamine. Officer Calvo testified that the straw was 2-3 inches sticking out of the fanny pack. Officer Calvo indicated he never saw the complete straw. Officer Calvo indicated he has never seen anyone keep sugar in a straw that way.

9. Officer Calvo could not recall if the fanny pack had more than one compartment. Officer Calvo was not sure what caused the straw to stick out because he could not see inside the fanny pack. Officer Calvo testified that the straw was at a slant pointed upwards from the fanny pack.

*People v. Manglona*
Case No. CF0664-21
Decision and Order

10. Officer Calvo asked Defendant to search the vehicle, which Defendant refused. Officer Calvo advised Defendant he was being arrested and asked him to step out of the vehicle.

11. Officer Calvo testified that the initial arrest was based on the traffic violation. Officer Calvo did not arrest Defendant for DWI.

12. Defendant did not provide Officer Calvo with a driver's license.

13. Officer Calvo was not part of any subsequent search of the vehicle. Officer Calvo was with Defendant while the search was conducted. Officer Calvo did not seize any items from the vehicle. Officer Calvo later arrested Defendant for possession after a field test was conducted by another GPD Officer.

14. Officer Calvo did not recall requesting for any back up at any point during his interaction with Defendant, however, other officers showed up at the traffic stop either because they saw his vehicle or heard him on the radio.

15. Officer Calvo was familiar with Defendant from prior instances but was not aware he was the driver prior to the traffic stop. Officer Calvo did not identify the operator of the vehicle until he approached the driver. Defendant did not need to identify himself; Officer Calvo already knew who Defendant was because he previously arrested Defendant for possession of methamphetamine. Officer Calvo testified that although he was aware of Defendant in this way, he did not immediately think that Defendant had methamphetamine on him.

16. Officer Calvo testified that he always uses his flashlight to illuminate a vehicle even if the area is well lit when working night shift. Officer Calvo testified he illuminates the inside of vehicles as he interacts with the operator of a vehicle, as he is concerned about where the operator may reach for weapons during a traffic pullover.

## DISCUSSION

Defendant moves the Court to suppress the evidence seized in this matter, arguing that Officer Calvo did not have reasonable suspicion to effectuate a traffic stop because no traffic violation had occurred. *See generally*, Mot. Suppress, Sep. 5, 2024; Reply, Sept. 26, 2024.

The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargualaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted).

In this case, Officer Calvo executed a traffic stop after observing that one of the brake lights on Defendant's vehicle was not working. Thus, the issue before the Court is whether one inoperable brake light provides reasonable suspicion for the effectuation of a traffic stop. The Government concedes that driving with only one functional brake light may not be a traffic violation in of itself but argues that the inoperable brake light nonetheless provided a valid justification for the stop because an inoperable brake light would have led to a failed safety inspection. (Opp'n at 4, Sept. 19, 2024).

As an initial matter, although Defendant argues that one inoperable brake light does not equate to a traffic violation because 16 GCA Section 3201(d) requires only one brake light, *see* Mot. Suppress at 3, the Court notes that the purpose of section 3201 is to require vehicles traveling during periods of time where there is not sufficient natural light so that the vehicle is visible to others. *See* 16 G.C.A. 3201(a). Section 3201(d) does not specifically reference "brake lights" or "stop lamps" and also requires that the rear lamp and license plate lamp to "be turned on or off by the same control switch whenever head lamps are lighted." *Id.* Guam's vehicle code defines

a rear lamp as "a light located upon the rear of a motor vehicle, trailer, or semitrailer, so arranged as to show red to the rear. A red reflector shall not be considered a rear lamp." 16 G.C.A. § 1102(aa). Title 16 GCA Chapter 3's provisions regarding brakes in motor vehicles do not include any specific requirements as to brake lights. *See* 16 G.C.A. §§ 3205 & 3206. Guam's vehicle code does provide, however, that:

> (a) The operator of any vehicle upon a highway shall, before starting, **stopping** or turning from a direct line, first see that such movement can be made in safety and, if any pedestrian may be affected by such movement, shall give a clearly audible warning signal, and whenever the operator of any other vehicle approaching or following may reasonably be affected by such movement, **shall give a signal**, as required in this Section, **plainly visible to the operator of such other vehicle to indicate such intention to make such movement**.

> (b) Any stop or turn signal required by this Section shall be given **either by means of hand and arm, or by signal lights, or a mechanical signal device** that clearly indicates to both approaching and following traffic intention to turn right or left …

> (c) Any stop or turn signal required by this Section shall be given either by means of the hand and arm or by a signal light or mechanical signal device, but when a vehicle is so constructed or loaded that a hand-and-arm signal would not be visible both to the front and rear of such vehicle, then the signals must be given by a light or signal device.

> (d) All signals required by this Section when given by hand and arm shall be given from the driver side of the motor vehicle in the following manner, and such signals shall indicate as follows:

>> (1) Left turn, hand and arm extended horizontally;

>> (2) Right turn, hand and arm extended upward;

>> **(3) Stop or decrease speed, hand and arm extended down ward.**

16 G.C.A. § 3324 (emphasis added). Thus, Guam law does not require vehicles to have more than one brake light. Rather, Guam law simply requires that the driver of the vehicle ensure that his or her vehicle's intended movement, whether it be stopping or turning, be plainly visible to any other operator either by means of hand and arm *or* by signal lights *or* by a mechanical device. Much of Guam's current vehicle code regarding vehicle equipment and the rules of the road were enacted into law in 1950's. While some sections have been amended since then, Guam's vehicle

code does not have any specific reference to "brake lights" or "stop lamps," unlike other jurisdictions.[1] *See, e.g.,* S.D. Codified Laws § 32-17-8.1 ("Except for a vehicle equipped with a slow-moving vehicle emblem in compliance with §§ 32-15-20 and 32-15-21, each motor vehicle, trailer, semitrailer, and pole trailer shall be equipped with at least two stop lamps with at least one on each side. . . . Each stop lamp shall display a red light visible from a distance of not less than three hundred feet to the rear in normal sunlight, except for a moped, which shall be visible from a distance of not less than one hundred fifty feet. Each stop lamp shall be actuated upon application of the brake which may be incorporated with one or more rear lamps. A violation of this section is a petty offense."); Fla. Stat. Ann. § 316.234 ("Any vehicle may be equipped and, when required under this chapter, shall be equipped with a stop lamp or lamps on the rear of the vehicle which shall display a red or amber light, visible from a distance of not less than 300 feet to the rear in normal sunlight, and which shall be actuated upon application of the service (foot) brake, and which may but need not be incorporated with one or more other rear lamps."); N.C. Gen. Stat. Ann. § 20-129 ("No person shall sell or operate on the highways of the State any motor vehicle manufactured after December 31, 1955, and on or before December 31, 1970, unless it shall be equipped with a stop lamp on the rear of the vehicle. No person shall sell or operate on the highways of the State any motor vehicle, manufactured after December 31, 1970, unless it shall be equipped with stop lamps, one on each side of the rear of the vehicle. . . . The stop lamps shall emit, reflect, or display a red or amber light visible from a distance of not less than 100 feet to the rear in normal sunlight, and shall be actuated upon application of the service (foot) brake. The stop lamps may be incorporated into a unit with one or more other rear lamps."); Ind. Code Ann. § 9-19-6-17 ("A motor vehicle may be equipped, and when required under this chapter must be equipped, with a stop lamp or lamps on the rear of the vehicle that: (1) displays only a red light, visible from a distance of not less than one hundred (100) feet to the rear in normal sunlight; (2) will be actuated upon application of the service (foot) brake; and (3) may be incorporated with

---

[1] Automobiles manufactured today typically have three rear brake lights. *See, e.g., State v. Burger,* 921 So. 2d 847, 849 (Fla. Dist. Ct. App. 2006) ("[S]ince the enactment of these statutes, most automobiles manufactured today are equipped with three rear brake lights as a standard feature.").

at least one (1) other rear lamp."). Each of these statutes clearly demonstrate a specific requirement for a brake light or brake lights, unlike Guam's vehicle code. Thus, Officer Calvo was incorrect in his belief that Guam law requires *all* brake lights to be operational on the roadway. The Court's analysis, however, does not end here.

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness. To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Hein v. North Carolina*, 574 U.S. 54, 60-61 (2014) (internal citations omitted). "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes – whether of fact or of law – must be *objectively* reasonable." *Id.* at 66 (emphasis in original). Thus, the issue before the Court is whether Officer Calvo's mistake of law was *objectively* reasonable. The Court finds not.

The Government argues that "[s]topping a vehicle an officer knows does not comply with safety standards is reasonable for the purpose of checking for a current safety inspection." (Opp'n at 4). Although vehicles are required to go through safety inspections to ensure they are functioning properly, these inspections are conducted on an annual basis with certain exceptions, and a failed safety inspection would lead to the owner of the vehicle unable to renew any registration. *See* 16 G.C.A. § 3601(a) (setting forth vehicles are to be inspected upon initial registration; annually thereafter; and following a collision if extensive repairs are necessitated) & (d) ("The Director of Revenue and Taxation is authorized to suspend the registration of any motor vehicle . . . which does not have a current certificate of safety inspection and approval, or which does not display any required decalcomania or other identification with reference to inspection status. . .). As Defendant sets forth in his Reply, "[t]here is no legal requirement that a vehicle on the road pass a hypothetical safety [inspection] at every time imaginable, only that it pass at designated times." (Reply at 2). There was no testimony that the vehicle was pulled over for an expired registration tag or that the vehicle had failed a required safety inspection and was being driven freely without required repairs.

In *Hein,* 574 U.S. 54 (2014), the Supreme Court found an officer's error of law reasonable where a North Carolina statute that referred to a "stop lamp" could have been interpreted to mean that only a single working brake light was required, whereas another subsection of the same statutory provision which required that vehicles "have all originally equipped rear lamps or the equivalent in good working order" could have been interpreted to mean that if the vehicle has multiple stop lamps, all must be functional. As noted earlier, Guam law does not contain any provisions regarding "brake lights." The Court acknowledges that 16 G.C.A. 3324 requires a stop or turn signal to be given by "*a* light or signal device" when "a vehicle is so construed or loaded that a hand-and-arm signal would not be visible to both the front and rear of such vehicle." *See* 16 G.C.A. § 3324(c). Section 3324 only requires a singular light or signal device if a hand-and-arm signal would not be visible. Here, Officer Calvo testified that Defendant had at least one working brake light on the night of the traffic stop. Accordingly, the Court does not find Officer Calvo's mistake of law, that more than one working brake light is required, to be objectively reasonable. Therefore, the Court must grant Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Suppress. Parties shall return for a Status Hearing on March 4, 2025 at 10:00 a.m.

**IT IS SO ORDERED** this 22nd day of January, 2025.

_____

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA EMAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:

AG, PDSC

Date: 1/22/25 Time: 2:04 pm

Antonio D. Cruz
Deputy Clerk, Superior Court of Guam

*People v. Manglona*
Case No. CF0664-21
Decision and Order